PASCUAL FÉLIX ORTEGA, ETC., ET AL., Plaintiffs and Appellees, *v.* SAN MIGUEL Y GONZÁLEZ, ETC., ET AL., Defendants; and ANDRÉS SAN MIGUEL, Defendant and Appellant.

No. 8956. Argued December 13, 1944.—Decided January 15, 1945.

*Edelmiro Martínez Rivera* for appellant. *Arturo Ortiz Toro* and *Jorge Ortiz Toro* for appellees.

Mr. Chief Justice Travieso delivered the opinion of the court.

The complaint in this case sets forth, in brief, the following facts: On June 14, 1941, at about 11 p. m., the plaintiff was travelling as a passenger on a public bus which belonged to defendant Manuel Rossy, and was going from Guaynabo to Santurce, on the right side of the road, at a speed rate of 35 miles per hour. The bus collided with a steam roller belonging to Robert R. Prann, who had leased it "to codefendants Andrés San Miguel & Enrique González, personally, or to the defendant partnership (San Miguel & González), as such." At the time of the accident, the steam roller was being driven, in the same direction as the bus, towards Mr. Prann's establishment and carried no lights to warn of its presence and avoid a collision. Due to the negligence of the defendants, the right side of the bus struck the left rear corner of the steam roller and in consequence thereof, the plaintiff sustained several wounds, bruises, and physical pain and mental suffering, for which he claims damages in the sum of $7,000.

Defendants Andrés San Miguel and Enrique González set up, by way of demurrer, (a) that the complaint did not state facts sufficient to constitute a cause of action; (b) that the complaint was ambiguous, unintelligible, and uncertain; and (c) that there was a nonjoinder of parties defendant. The defendants failed to specify the grounds on which those objections were based, and the demurrer was overruled.

Before filing their answer said defendants moved that the plaintiff be compelled to elect and specify "whether the

action brought by him against the moving parties was to be continued against them personally or against the supposed general partnership 'San Miguel & González.' '' The motion was denied. The defendants thereupon filed an answer. They denied the essential averments of the complaint and set up the following special defenses: (a) nonjoinder of parties defendant, in that the complaint did not contain ''a clear reference to, or specific designation of, the party against whom the claim is made''; (b) that the complaint was ambiguous, unintelligible, and uncertain; and (c) that the facts alleged were insufficient to constitute a cause of action against the defendants, either individually or jointly. As new matter, they alleged that the accident did not involve any act or omission whatsoever on their part; that the proximate or immediate cause of the accident was the negligence of the plaintiff and of the driver of the bus in which the former was travelling; that even if there was any negligence on the part of the defendants, the plaintiff and said driver had the last clear chance to avoid the accident; and, lastly, that the plaintiff, as a passenger on the bus, had assumed all the risks that might arise from the negligent operation of such vehicle on the highway, it being his duty to warn the chauffeur of the danger to which the latter was subjecting the plaintiff.

The present appeal has been taken from the judgment, whereby the complaint was sustained ''only as to defendant Andrés San Miguel,'' who was adjudged to pay to the plaintiff damages in the sum of $3,500, together with costs and $350 as attorney's fees.

■■ The first error assigned is directed against the action of the lower court in overruling the demurrer to the complaint and in dismissing the special defenses set up in the answer.

Section 106 of the Code of Civil Procedure provides that ''the demurrer must distinctly specify the grounds upon which any of the objections to the complaint are taken.'' It

adds: "Unless it do so it may be disregarded." The defendants confined themselves to the allegation "that there is a nonjoinder of parties defendant in the complaint," without stating the person or persons whose appearance might be necessary for a complete determination of the controversy. The defendants could have aided the court in bringing in as defendants all the members of the partnership "San Miguel, González & Martínez," by merely informing the court that among said members was José Martínez Reventós, who had not been summoned and whom they considered as a necessary party to the action. They not only failed to disclose that fact, which was peculiarly within their knowledge and unknown to the plaintiff, but throughout the entire proceeding and up to the time of the trial, they concealed and denied the fact that among the defendants San Miguel and González and Mr. Martínez there existed a partnership who was engaged in the business of constructing public and private works, under the firm name "San Miguel, González & Martínez." Let us see what was the device—a censurable one in our opinion—employed by the defendants for the purpose of preventing, through the concealment of Mr. Martínez's status as a partner, that the partnership "San Miguel, González & Martínez" should be submitted to the jurisdiction of the court through the summoning of the only partner who had not been served with process.

In their motion to compel the plaintiff to elect to continue the action either against defendants San Miguel and González, individually, "or against the supposed partnership, San Miguel & González," the defendants for a second time refrained from disclosing the name of the partner who had not been summoned.

In the answer, as a special defense, the defendants reproduced the objection that there was a nonjoinder of parties defendant in the complaint "as the same did not contain a clear reference to, or specific designation of, the party

against whom the claim is made," and they again withheld the name of the partner who had not been summoned.

Not content with the above, in answering the complaint they included a definite denial under oath in the following terms:

"The defendants deny . . . that they are now, or have been, at the times mentioned in the complaint, engaged in any business under their individual names or under the name of any partnership, or collectively under any firm's name, *or that any partnership exists or has existed between them for the purpose of engaging in any business or enterprise.*

"They deny that the steam roller with which said vehicle is alleged to have collided was leased to the defendants Andrés San Miguel and Enrique González, either individually or jointly in their personal capacity, or as a partnership, *or to any partnership of which the defendants are members or form a part*; they deny the existence of any contract connecting the defendants with the steam roller or with the operation or custody of the same. . ." (Italics ours.)

There was no error in the overruling of the demurrer. The latter did not comply with the requisites set forth in § 106 of the Code of Civil Procedure, and the court acted correctly in overruling the same. Nor did the court err in dismissing the special defense of nonjoinder of parties defendant, not only because such an objection was a reproduction of the demurrer which was not privileged and had already been overruled, but particularly because it was in conflict with the evidence adduced by the defendants themselves, whereby it had been clearly established that the defendants San Miguel and González were members of the partnership San Miguel, González & Martínez.

The assignments numbered from 5 to 10, inclusive, may be considered as a single one, inasmuch as they all refer to the weighing of the evidence made by the trial court with respect to the occurrence of the accident and the cause thereof.

We have carefully examined the transcript of the evidence. The latter, as happens in most cases of this kind, was conflicting.

The evidence for the plaintiff tended to show that the steam roller was travelling along the highway from Guaynabo to Santurce, to be delivered to its owner, Robert A. Prann, in his establishment located on the highway between Santurce and Bayamón near the Brugal Brewery; that the steam roller carried no light whatsoever to warn other persons operating vehicles on the same highway; that the only precaution taken by the lessees of the steam roller to avoid a possible collision was the sending by them of a truck which was to follow the steam roller at a distance of about 100 meters in order to illuminate that vehicle from behind with the truck's head-lights until the point of destination should be reached; that when they were already near the establishment of Mr. Prann, the driver of the truck withdrew, leaving the steam roller on the road without any light and without any illumination from the truck; that while the steam roller was travelling on the right along a bend of the road in front of the Iriarte Quarry, the bus on which the plaintiff was travelling and which was going in the same direction as the steam roller, suddenly encountered the latter, at a distance of only a few feet, without it being possible for the driver of the bus to avoid the collision between the two vehicles. The fact that at that time the steam roller carried no lights and was not followed by any truck which would illuminate the road, was established by the testimony of several witnesses and by the statements made by the driver of the steam roller at the place of the accident and immediately after the occurrence of the collision, to the effect that the person responsible for the accident was the driver of the truck who had left them there without any light.

The evidence for the defendants tended to prove the contrary. Their witnesses, with the exception of Insular Policeman Salvador Más, testified that the steam roller carried

two lights, one in front and one in the rear, and that, in addition, at the time of the accident that vehicle was being illuminated by the headlights of the truck which was following. The testimony of the policeman Más, called by the defendants, was similar to that of the witnesses for the plaintiff.

The trial judge, before whom the witnesses for both parties testified, gave full credence to those for the plaintiff and reached the conclusion that, even though the driver of the bus on which the plaintiff was travelling had been negligent in operating said vehicle at a higher rate of speed than 35 miles per hour, the accident was due, not to such speed, but to the fact that the steam roller carried no rear light. Since that conclusion is amply supported by the evidence, we would not be warranted in disturbing the same even if we were of the opinion, which we do not hold, that the lower court would have been justified in reaching a different conclusion. The driving of the steam roller in the manner established by the evidence herein constitutes negligence.[1]

■■ Assignments 4 and 11 must be considered jointly. In the former it is alleged that the court erred in holding that on March 12, 1941, the partnership San Miguel, González & Martínez did not exist, and therefore it could not contract for the lease of the steam roller; and in the latter, that the decision adjudging defendant San Miguel individually liable is erroneous. We shall examine the evidence in order to determine whether the same warrants the conclusion reached by the lower court.

The industrial partnership "San Miguel, González & Martínez" was constituted by Enrique González, Andrés San Miguel, and José Martínez Reventós, by a public deed executed in Ciales, on May 26, 1938, the principal object of

---

[1] Section 56(*g*) of Act No. 140 of 1940; *Pérez* v. *Santiago*, 56 P.R.R. 732; *Winn* v. *Long*, 203 Cal. 758; *Martin* v. *Herzog et al.*, 228 N.Y. 164; *Arvo* v. *Delta Hardware Co., et al.*, 231 Mich. 488, 204 N.W. 134.

the firm being the bidding for, and construction of, public works. The partnership was constituted for the term of three years which was to expire on December 31, 1940. The pertinent provisions of the articles of copartnership read as follows:

(*a*) "The partner Don Enrique González González shall be the director of the works and general manager of the interests and properties of the partnership.

(*b*) "6. The name of the partnership shall be 'San Miguel, González & Martínez' and, when signing, said name shall be used, adding the name of the partner who may sign for the firm thus: 'San Miguel, González & Martínez, By . . . . .' (insert here the name of the partner)."

The contract for the lease of the steam roller (Plaintiff's Exhibit 1) is entitled thus: "Contract for the lease of a steam roller entered into between Mr. Roberto R. Prann, P. O. Box 144, San Juan, as owner of the same, and *Messrs. San Miguel and González,* as lessee." Said contract contains, among others, the following provision:

"8. Immediately upon receiving the steam roller, the lessee shall assume full responsibility for any damages or accidents whatsoever which may occur."

That document was signed thus: "Approved: (handwritten) R. R. P. Roberto R. Prann.—Accepted: (Signed) San Miguel González, by (Sgd.) Andrés San Miguel, 3426 Sant. 3/12/41."

With whom did Mr. Prann, owner of the steam roller, contract? Let us continue examining the evidence.

Mr. Prann testified that the steam roller belonged to him and that he had leased it to "San Miguel & González" on March 12, 1941; the lease rental was paid by "San Miguel & González" and they controlled the operation of the steam roller after it left the establishment of its owner; the signature affixed to the contract was that of Andrés San Miguel.

Defendant Andrés San Miguel testified that the steam roller was leased by "San Miguel, González & Martínez"; that it was he who personally leased it and went to the house of Mr. Prann; that the signature appearing at the foot of the contract is his. Upon being asked: "Did you sign there on behalf of San Miguel & González? He answered: "Well, it was an oversight on my part. I always signed San Miguel, González & Martínez. On that day, I made a mistake"; that it was an error on his part not to include the name of Martínez; that he has never been associated with González alone; that he understood that he would not have to sign for Martínez or to affiix the latter's name; that he always included the name of Martínez except on that day; that it was he who paid the wages of the engineer who operated the steam roller, for account of San Miguel, González & Martínez; that it was he who ordered the return of the steam roller to Mr. Prann.

The conflict arising from the whole evidence and the variance between the allegations in the answer and the testimony given by defendant San Miguel at the trial, was decided against him by the trial court, and quite correctly, in our opinion. On what occasion did San Miguel tell the truth —when he alleged under oath that the steam roller had not been "leased to any partnership formed by the defendants" or when he testified at the trial that the same had been leased to the partnership San Miguel, González & Martínez, of which both defendants were members? The court was justified in not giving any credit to the testimony of that defendant.

We have already seen that, according to the express terms of the articles of copartnership, the partner Enrique González was director and manager of the interests and properties of the partnership. Hence, as there was a partner specially charged with such administration, it is quite doubtful that the partner San Miguel had any power to contract in the name of San Miguel, González & Martínez for

the lease of the steam roller: See §§ 1583, 1584, 1586, and 1588 of the Civil Code and §§ 105 and 108 of the Code of Commerce. But even if we were to concede that Mr. San Miguel, as a member of the partnership, was empowered to contract in its name, the actual fact is that Mr. San Miguel did not contract in the name of the partnership San Miguel, González & Martínez, but in the name of a nonexisting partnership.

We agree with the appellant that the court erred in reaching the broad conclusion to the effect that the partnership San Miguel, González & Martínez was not empowered to enter into said contract of lease, inasmuch as the terms of the partnership had already expired when the lease was made. This error, however, could not prejudice the appellant in any way, for we have already noted and decided that defendant San Miguel had not contracted in the name of said partnership.

It having been established that it was defendant San Miguel who personally negotiated for the lease of the steam roller; that the contract was not made nor signed in the name of San Miguel, González & Martínez as required by the articles of copartnership; and that the firm "San Miguel and González," on whose behalf the contract was signed, never existed, we are of the opinion that the lower court did not err in holding that defendant Andrés San Miguel was the real and sole lessee of the steam roller and, as such lessee, responsible for the injury caused to the plaintiff.

The judgment appealed from should be affirmed.